FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

00 JAN 27 AM 11: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

STEPHEN BUCHANAN and )
TERENCE BUCHANAN, )
                                       )
    Plaintiffs, )
                                       )    CV 99-PT-0738-M
vs. )
                                       )
CITY OF GADSDEN, ALABAMA, )
                                       )
    Defendant. )

ENTERED

JAN 27 2000

## MEMORANDUM OPINION

This cause comes to be heard on Defendant's, City of Gadsden ("defendant"), motion for summary judgment filed December 20, 1999.

## FACTS

For the purposes of summary judgment, the facts as alleged by Stephen and Terence Buchanan ("plaintiffs") will be taken as true.[1] On or about March 29-30, 1997,[2] plaintiffs left Penny Profit Bar-B-Q and stopped at the Shell Gas Station at the corner of 3rd Street and Meighan Boulevard in Gadsden, Alabama. Terence parked his car, a black Mitsubishi 3000 GT, at a gas pump, and entered the station to leave his credit card in order to have the pump turned on. Inside the station, Terence noticed that five Gadsden police officers were handcuffing and

---

[1] Facts taken from plaintiffs' depositions.

[2] The events at issue took place late at night on the 29th or early in the morning on the 30th.

1

23

stepped on his ankle, and arrested him.

During this time, Stephen had already been arrested and placed into the back of a police car. Stephen was not hurt in anyway, but the hood of his car was damaged when one of the police officers arresting his brother stepped onto the hood. Both brothers were taken to the Etowah County Detention Center and held for three to four hours. After their release, Terence went to Riverview Hospital to have his ankle examined. One of the ligaments in Terence's ankle was torn.

Stephen's arresting officer admitted that he arrested Stephen because he did not give him his driver's license, and that he questioned him to ascertain whether or not he was involved with the person just arrested inside the station. No police officer read the Miranda warnings to Stephen or Terence.

## DISCUSSION

### A. Standard of Review

Summary judgment may be granted based upon facts developed during the administrative proceedings, the pleadings, discovery, and supplemental affidavits if together, they show that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. Id. The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. Id. at 324. The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in

3

a similar fashion. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987).

**B. 42 U.S.C. § 1983**

Plaintiffs contend that they were deprived of their Fifth, Eight, and Fourteenth Amendment rights because the police officers did not read the Miranda warnings to them and used excessive force in their arrest in violation of 42 U.S.C. § 1983.[3] Defendant asserts that there was no requirement under the circumstances for the Miranda warnings to be given, and that the police department cannot be held liable under § 1983 because there is no evidence of a policy or custom of widespread misconduct, as required by Monell v. Department of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**1. Miranda Warnings**

Assuming that Miranda warnings were appropriate, which is not clear, the Eleventh Circuit has held that a failure to follow Miranda procedures does not violate any substantive Fifth Amendment right leading to money damages under § 1983. Jones v. Cannon, 174 F.3d 1271, 1290-91 (11th Cir. 1999). "[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself." Id. at 1291 (quoting Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994)). "The reading of Miranda warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself.... Thus, the remedy for a Miranda violation is the

---

[3] Section 1983 states:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

4

exclusion from evidence of any compelled selfincrimination, not a section 1983 action." Id. (quoting Warren v. City of Lincoln, Neb., 864 F.2d 1436, 1442 (8th Cir. 1989)). Based on this, plaintiffs have stated no claim for relief under 42 U.S.C. § 1983 regarding the absence of a reading of the Miranda warnings.

### 2. Excessive Force

A municipal entity may be held liable for the actions of a police officer under 42 U.S.C. § 1983 only when an official policy or custom caused the injury at issue. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); see also Brooks v. Scheib, 813 F.2d 1191, 1192-93 (11th Cir. 1987); Cannon v. Taylor, 782 F.2d 947, 949-51 (11th Cir. 1986). "There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers..." Id. Thus, a municipality is not automatically liable even when a police officer violates a person's constitutional rights. Id. A municipality can be liable where it has inadequately trained or supervised its employees, the failure to train or supervise is a city policy, and that policy caused the employees to violate a citizen's constitutional rights. Id. (citing City of Canton v. Harris, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Likewise, a "custom" is a practice so well settled and established that it takes on the force of law. See Cannon, 782 F.2d at 950 (citing Monell, 436 U.S. at 690-91).

A policy or custom of this sort is often tacit, rather than explicit. Thus, a plaintiff may show such a policy by offering evidence that the city's failure to train or supervise evidences a "deliberate indifference" to the rights of its citizens. Id. (citing City of Canton, 489 U.S. at 388-89, 109 S.Ct. 1197). "To establish ... 'deliberate indifference,' a plaintiff must present some

5

evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." Id. at 1350-51 (internal citations omitted).

Plaintiffs contend that the defendant has a policy or custom of a failure to properly arrest its citizens and to administer the Miranda warning. As discussed above, plaintiff's Miranda warning argument is without merit. As to a policy or custom by the defendant to fail to train its employees regarding proper arrest procedures, plaintiffs have offered no substantial evidence of that fact. There is no evidence that the city was on notice of a need for specialized training.[4] The evidence demonstrates that the defendant's police officers receive regular and statutorily acceptable training regarding their police duties, including arrest procedures.[5] Based on both the lack of notice to the defendant, as well as evidence of adequate training and supervision, viewing the evidence in the light most favorable to the plaintiff, there is no evidence such that a reasonable jury could return a verdict for the plaintiff. Isolated acts do not support such claims.

---

[4] Neither of the two police officers deposed had a significant record of prior complaints of excessive force. Such a record would not necessarily be dispositive in any case. See Brooks, 813 F.2d at 1193 ("[T]he number of complaints bears no relation to their validity.")

[5] Both of the officers deposed testified to the regular training they received in general policy duties, including arrest procedures.

6

**C. Conclusion**

Based on the foregoing, defendant's motion for summary judgment will be granted.[6]

This 27 day of January, 2000.

/s/ Robert B. Propst
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[6] The court does not, of course, approve of the alleged conduct. It must, however, follow the law.

7